UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:11-cr-00021-JAW |
| | ) | |
| TROY BRYANT | ) | |

**ORDER ON MOTION TO DISMISS**

Troy Bryant moves to dismiss the indictment charging him with possession of ammunition after having been convicted of a misdemeanor crime of domestic violence. He first claims that the charge infringes his Second Amendment right to bear arms. He next contends that the indictment fails to state a federal offense because the First Circuit's decision in *United States v. Nason*,[1] which concluded that a conviction under Maine's assault statute constitutes a "misdemeanor crime of domestic violence" under federal law, is no longer binding on this Court. Instead, he asserts that in interpreting the term, "physical force," as it appears in the firearms possession statute, the Court must apply the construction the United States Supreme Court in *Johnson v. United States*[2] and the First Circuit in *United States v. Holloway*[3] gave the same term for purposes of the Armed Career Criminal Act (ACCA), and if it does so, the indictment must be dismissed because the Defendant has not committed a predicate crime. The Court has previously considered and rejected most of these arguments and does so again. As regards *Johnson* and *Holloway*, the Court does not consider judicial interpretations of the ACCA to be

---

[1] 269 F.3d 10 (2001).
[2] 130 S. Ct. 1265 (2010).
[3] 630 F.3d 252 (1st Cir. 2011).

sufficiently persuasive to disturb the binding power of First Circuit precedent on the question of the definition of "physical force" for purposes of federal firearms possession prohibitions. The Court denies the Defendant's motion.

## I. BACKGROUND

### A. Procedural Background

On February 24, 2011, a federal grand jury indicted Troy Bryant for possessing ammunition after having been convicted of a misdemeanor crime of domestic violence in violation of 18 U.S.C. § 922(g)(9).[4] *Indictment* (Docket # 13). On March 11, 2011, Mr. Bryant moved to dismiss the indictment. *Mot. to Dismiss Indictment* (Docket # 20) (*Def.'s Mot.*). On April 1, 2011, the Government responded, and on April 4, 2011, Mr. Bryant replied. *Gov't's Resp. to Def.'s Mot. to Dismiss* (Docket # 24) (*Gov't's Resp.*); *Def.'s Reply to Gov't's Resp. to Mot. to Dismiss* (Docket # 25) (*Def.'s Reply*).

## II. DISCUSSION

### A. Motion to Dismiss Indictment

A Court should exercise its authority to dismiss cautiously since to dismiss an indictment 'directly encroaches upon the fundamental role of the grand jury.'" *United States v. Pettengill*, 682 F. Supp. 2d 49, 51 (D. Me. 2010) (quoting *United States v. Thomas*, 519 F. Supp. 2d 141, 143-44 (D. Me. 2007)). The power is "appropriately reserved, . . . for extremely limited circumstances. *Whitehouse v.*

---

[4] 18 U.S.C. § 922(g)(9) makes it unlawful for any person "who has been convicted in any court of a misdemeanor crime of domestic violence, to . . . possess . . . any . . . ammunition." According to the indictment, Mr. Bryant was convicted in 2005 of a misdemeanor crime of domestic violence in violation of 17-A M.R.S. § 207. *Indictment* at 1.

2

*United States Dist. Court*, 53 F.3d 1349, 1360 (1st Cir. 1995). "Unless the Government has made what can fairly be described as a full proffer of the evidence it intends to present at trial to satisfy the jurisdictional element of the offense, the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *Pettengill*, 682 F. Supp. 2d at 51 (quoting *United States v. Alfonso*, 143 F.3d 772, 776-77 (2nd Cir. 1998)).

B.  **The Second Amendment**

Mr. Bryant first argues that 18 U.S.C. § 922(g)(9) violates the Second Amendment. *Def.'s Mot.* at 2-8. He acknowledges that the Court "previously considered, and rejected, this basis to dismiss an Indictment charged pursuant to . . . §922(g)(9) by way of the order entered in *United States v. Booker*, 570 F. Supp. 2d 161 (D. Me. 2008); *United States v. Wyman*, 667 F. Supp. 2d 151 (D. Me. 2009); and *United States v. Pettengill*, 682 F. Supp. 2d 49 (D. Me. 2010)." *Def.'s Mot.* at 5. He nevertheless challenges those rulings on two grounds: (1) the rulings employed improper levels of scrutiny; and (2) they were based on a flawed construction of § 922(g)(9). The Court stands by its constitutional analyses in those cases. As to the latter challenge, until the First Circuit directs otherwise, the Court concludes that its construction of § 922(g)(9) in *Booker*, *Wyman*, and *Pettengill* remains good law in this District.

C.  **Failure to State a Federal Offense**

Mr. Bryant argues that the indictment fails to state a federal offense by failing to allege a predicate crime under § 922(g)(9). To be convicted of violating §

3

922(g)(9), the defendant must have been previously convicted of a misdemeanor crime of domestic violence. The indictment alleges that Mr. Bryant had been previously convicted of such a crime, specifically a violation of Maine's assault statute, 17-A M.R.S. § 207. However, Mr. Bryant argues that a conviction under Maine's assault statute, without more, does not necessarily meet the federal definition of a misdemeanor crime of domestic violence because it does not require the same *mens rea* or level of physical force.[5]

Section 921(a)(33)(A) defines "misdemeanor crime of domestic violence" for purposes of §922(g)(9) as:

> . . . an offense that—
>
> (i) is a misdemeanor under Federal, State, or Tribal law; and
>
> (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent,

---

[5] Mr. Bryant argues that consistent with *Taylor v. United States*, 495 U.S. 575, 595 (1990) and *Shepard v. United States*, 544 U.S. 12, 26 (2005), the Court must employ the First Circuit's two-tiered categorical approach in determining whether his prior conviction meets the definition of "use or attempted use of physical force." *Def.'s Mot.* at 8-9. The two-tiered approach turns first to the statutory language to determine whether the statute "sweeps more broadly" than the qualifying definition, and if so, turns next to whether the record of conviction establishes the factual basis for the conviction. *United States v. Miller*, 478 F.3d 48, 50 (1st Cir. 2007). In *Booker*, this Court agreed that the *Taylor/Shepard* approach, as refined by the First Circuit, would apply "with equal force to determine if a person has been convicted of a misdemeanor crime of domestic violence within the meaning of 18 U.S.C. § 921(a)(33)." *Booker*, 555 F. Supp. 2d at 223. Here, the Government attached to its response the court documents for Mr. Bryant's assault conviction. *Gov't's Resp.* Attach. 1-3. But they are unrevealing. The Government also attached a copy of the police report, which is revealing but may not be considered under *Shepard*. 544 U.S. at 26; *United States v. Cadieux*, 500 F.3d 37, 43 (1st Cir. 2007) ("The Court, however, rejected the use of a police report as a basis for judicial fact-finding because permitting a sentencing judge considering an [Armed Career Criminal Act] enhancement to make a disputed finding of fact about what the defendant and state judge must have understood as the factual basis of the prior plea raises Sixth and Fourteenth Amendment concerns") (internal punctuation omitted). In this case, therefore, the Court agrees with Mr. Bryant that the court-sanctioned documents do not clarify under which level of *mens rea* or degree of force Mr. Bryant acted when he committed the domestic assault.

4

or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

17-A M.R.S. § 207 states in part:

1. A person is guilty of assault if:

A. The person intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person.

Mr. Bryant contends that intentionality must be an element of the predicate crime for the crime to fit the definition of "misdemeanor crime of domestic violence" and observes that "recklessness" satisfies the *mens rea* requirement for conviction under § 207. *Id.* at 8. He further notes that one can be convicted of violating § 207 for merely offensive contact, which he argues does not necessarily rise to the level of "use or attempted use of physical force" within the meaning of a "misdemeanor crime of domestic violence."[6] *Id.* at 8-10 (citing 18 U.S.C. § 921(a)(33)(A)(ii)); *Def.'s*

---

[6] Mr. Bryant discusses *State v. Patterson*, 2004 ME 79, 851 A.2d 521, to demonstrate how minimal the "offensive physical contact" may be under the Maine assault statute. In *Patterson*, a boyfriend arrived home to find a spot in newly-installed carpet. *Id.* 2004 ME 79, ¶ 3, 851 A.2d at 522. He became irritated and commented as he attempted to clean the spot. *Id.* The comments provoked the girlfriend and she took a piece of pizza and rubbed it into the carpet. *Id.* In response, the boyfriend picked up his girlfriend, carried her outside, and left her there. *Id.* Although characterizing the crime as of "a minimal nature," the district judge found the boyfriend guilty of assault and sentenced him to "simply the conviction" and a small fine. *Id.* 2004 ME 79, ¶ 9, 851 A.2d at 523. Although Mr. Bryant does not mention it, the Maine Supreme Judicial Court vacated the conviction and remanded the case based on the District Court's erroneous interpretation of 17-A M.R.S. § 105, which allows a person to use nondeadly force to the extent he reasonably believed it necessary to prevent what reasonably appeared to be an unlawful taking of his property or criminal mischief. *Id.* 2004 ME 79, ¶ 14-15, 851 A.2d at 524-25.

Mr. Bryant also does not mention that after *Patterson* was remanded, the case returned to the Maine Supreme Judicial Court. *State v. Patterson*, 2005 ME 55, 881 A.2d 649 (*Patterson II*). After the initial remand, the District Court had reinstated the conviction and Mr. Patterson appealed again. Again the Maine Supreme Judicial Court vacated. *Id.* In *Patterson II*, the Law Court noted that in the context of a section 105 defense, "[b]ecause recklessness is the minimum required mens rea requirement for assault pursuant to 17-A M.R.S. § 207(1)(A), the State was required to prove beyond a reasonable doubt that Patterson's beliefs that led to his actions 'when viewed in light of the nature and purpose of [his] conduct and the circumstances known to [him], [were] grossly deviant from what a reasonable and prudent person would believe in the same situation.'" *Patterson II*, 2005 ME 55, ¶ 8, 881 A.2d at 651 (quoting 17-A M.R.S. § 105).

5

*Reply* at 1 (clarifying that his challenge to using a § 207 conviction as a predicate misdemeanor to a § 922(g)(9) charge was based not only on the *mens rea* issue, but also the contention that "offensive contact" does not necessarily amount to "physical force"). This Court has previously addressed these issues and no intervening case law changes the outcome.

### 1. The First Circuit's Holding in *Nason*

In *United States v. Nason*, the First Circuit rejected the same *mens rea* and level of force arguments Mr. Bryant raises here. 269 F.3d 10 (2001). The *Nason* Court considered whether conduct violating the "offensive physical contact" prong of § 207 "necessarily involves the use or attempted use of physical force" such that convictions under that prong may qualify as predicate offenses under §922(g)(9). *Id.* at 11-12. It held that "all convictions under [17-A M.R.S. § 207] qualify as misdemeanor crimes of domestic violence within the purview of 18 U.S.C. § 922(g)(9)." *Id.* at 21. The *Nason* Court explained that "Congress intended section 922(g)(9) to encompass crimes characterized by the application of *any* physical force." *Id.* at 18.

Mr. Bryant argues that *Nason* "does not address the intent issue presented by Congress's selection of the term 'use of force.'" *Def.'s Mot.* at 11. The Court disagrees. In *Nason*, the First Circuit reviewed the decisions of the Maine Supreme Judicial Court, which addressed "offensive physical contact" under § 207, and concluded that the phrase involves "something less than bodily injury" but more

---

Although Mr. Bryant's point is well taken about the minimal nature of the offensive physical contact that may sustain an assault conviction, the *Patterson* cases also reflect that a conviction for minimal offensive physical contact may be more difficult under Maine law than Mr. Bryant allowed.

6

than "mere touching." *Nason* 269 F.3d at 19 (quoting *State v. Pozzouli*, A.2d 745 (Me. 1997)). The First Circuit cited § 207's "mens rea requirement" as one of the distinctions between offensive physical contact and mere touching. *Id.* In other words, the *Nason* Court considered § 207's *mens rea* requirement as a factor harmonizing its elements with the definition of misdemeanor crime of domestic violence. Moreover, although Mr. Bryant emphasizes the word "use" preceding the phrase "physical force," suggesting it supplies an intentionality element to the definition of misdemeanor crime of domestic violence, *see Def.'s Mot.* at 9, the *Nason* Court found that "offensive physical contacts with another person's body categorically involve the use of physical force." 269 F.3d at 20. Because knowing and reckless are expressly sufficient *mentes reae* for offensive physical contact under § 207, the First Circuit implicitly rejected the idea that intentionality is an essential element of "use of physical force."

Finally, Mr. Bryant cites no First Circuit case law for the assertion that intentionality is a required element of misdemeanor crimes of domestic violence. Although he points to the case law of other circuits, which have focused on the level of force necessary to constitute "physical force," *see Def.'s Mot.* at 9-11 (citing *United States v. Hays*, 526 F.3d 674 (10th Cir. 2008) and *United States v. Belless*, 338 F.3d 1063 (9th Cir. 2003)), Mr. Bryant has not directed the Court to any circuit discussion of intentionality. *Id.* In short, the Court remains bound by First Circuit precedent and is unconvinced that the decisions of other circuits presage a change in First Circuit law sufficient to "loosen the iron grip of *stare decisis*." *United States*

7

*v. Reveron Martinez*, 836 F.3d 684, 687 n.2 (1st Cir. 1988). In fact, in *United States v. Duval*, 496 F.3d 64, 84-85 (1st Cir. 2007), addressing the meaning of "violent felony" under the ACCA, a three-judge panel of the First Circuit itself observed that "[u]ntil such time as we revisit *Nason en banc*, we are bound to apply its holding that even 'offensive contact' constitutes a violent felony under Maine's assault and battery statute." (internal citation omitted).

### 2. Developments in the Law Since *Nason*

Mr. Bryant argues that intervening case law has overruled *Nason*. His argument highlights the term "physical force", which appears in the ACCA and in the definition of misdemeanor crime of domestic violence. The ACCA defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that

(i) has as an element the use, attempted use, or threatened use of <u>physical force</u> against the person of another; or
(ii) is a burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B) (emphasis supplied). As noted earlier, the statutory definition of misdemeanor crime of domestic violence contains the same term: "an offense that . . . has, as an element, the use or attempted use of <u>physical force</u> . . . ." 18 U.S.C. § 921(a)(33)(A) (emphasis supplied). Mr. Bryant says that the Court must apply judicial interpretations of "physical force" under the ACCA to "physical force" under the definition of misdemeanor crime of domestic violence and that when the

8

same interpretation is applied, Mr. Bryant's state conviction cannot serve as a predicate crime for a conviction under 18 U.S.C. § 922(g)(9).

Mr. Bryant's argument is premised on his assertion that in *Johnson v. United States*, 130 S. Ct. 1265 (2010), the Supreme Court effectively overruled *Nason*. In *Johnson*, the Court held that a defendant's prior battery conviction under Florida law was not a "violent felony" under the ACCA. *Id.* at 1265. The *Johnson* Court stated that, "in the context of a statutory definition of 'violent felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* at 1272 (citing *Flores v. Ashcroft*, 350 F.3d 666, 672 (7th Cir. 2003)). The *Johnson* Court held that such force was not a prerequisite for conviction under Florida's battery statute, which could be "satisfied by *any* intentional physical contact, 'no matter how slight.'" *Id.* at 1269-1270 (quoting *State v. Hearns* 961 So. 2d 211, 218 (Fla. 2007)).

For support, Mr. Bryant points to some stray judicial comments anticipating that in interpreting the meaning of "violent felony" in the ACCA, the Supreme Court might illuminate the meaning of "misdemeanor crime of domestic violence." *See Def.'s Mot.* at 9-13; *see also Duval*, 496 F.3d at 85 (incorporating the First Circuit's reasoning in *Nason* to its review of a district court's determination "that a conviction in Maine for simple assault constitutes a crime of violence for the purposes of the ACCA"); *United States v. Pettengill*, 682 F. Supp. 2d 49, 57-58 (D. Me. 2010) (addressing defendant's request that the motion be held in abeyance pending the disposition of *Johnson*, the Court noted that "there is no guarantee that

9

when the Supreme Court issues its opinion in *Johnson*, it will resolve the issues before the Court"); *United States v. Wyman*, 667 F. Supp. 2d 151, 154 n.4 (D. Me. 2009) ("Though not precisely the same question presented here or in *Booker*, the Supreme Court's decision in *Johnson* could inform the First Circuit's position in *Nason*"). More specifically, Mr. Bryant argues that *Duval* established that "the ACCA must be read in the same manner as § 922(g)(9)." *Def'.s Mot.* at 13.

The Court disagrees. In *Duval*, the First Circuit reviewed a district court's determination that a defendant's conviction under § 207 constituted a violent crime for purposes of the ACCA. 496 F.3d at 84-85. The *Duval* Court explained that it reviewed the district court's determination for "plain error." Under that standard, it was the defendant's burden to show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citing *United States v. Bennett*, 469 F.3d 46, 51 (1st Cir. 2006)). Noting that *Nason* was the only case cited by either party for guidance on the interpretation of § 207, the *Duval* Court stated that it could not "distinguish it in any meaningful way from the circumstances of [the defendant]'s case," and concluded that it was "bound to apply its holding that even 'offensive contact' constituted a violent felony under Maine's assault and battery statute." *Id.* at 85. Moreover, the *Duval* Court concluded that *Nason* was still binding law in the First Circuit. *Id.* The Court does not read *Duval*, as Mr. Bryant suggests, as mandating a wholesale importation of its construction of the ACCA into the definition of

10

"misdemeanor crime of domestic violence." Rather, the *Duval* Court's decision was grounded on the twin doctrines of plain error and *stare decisis*. *Id.* at 84-85.

Nor would Mr. Bryant's argument find support in *Johnson*. The *Johnson* Court's construction of "physical force" in the ACCA context is narrower than the First Circuit's construction of "physical force" in the § 921(a)(33)(A) context, which includes "any physical force, regardless of whether that force resulted in bodily injury or risk of harm." *Nason*, 269 F.3d at 16-17. In *Johnson*, the Supreme Court strongly indicated that the respective statutes harbor distinct meanings of "physical force." The *Johnson* Court emphasized that its holding was limited to the definition of "physical force" in the context of the ACCA. 130 S. Ct. at 1271-1273. It expressly stated that "[w]e do not decide that the phrase has the same meaning in the context of defining a *misdemeanor* crime of domestic violence. The issue is not before us, so we do not decide it." *Id.* at 1273. The Supreme Court, therefore, expressly declined to endorse Mr. Bryant's view that the phrase "physical force" has the same meaning in both contexts.

Moreover, the *Johnson* Court's emphasis of the word "misdemeanor" highlights the distinction between two separate statutory meanings of physical force: (1) physical force as an element of a violent felony and (2) physical force as an element of a misdemeanor crime of domestic violence. The two meanings are elements of distinct categories of crimes assigned separate levels of criminality. It stands to reason that the degree of force Congress deemed necessary to constitute

11

an element of a violent felony is greater than that necessary to constitute a misdemeanor.

To the extent *Johnson* addressed the question, the Supreme Court suggested that the same phrase in the two statutes could have different meanings. The *Johnson* Court elaborated on the variant meanings of "physical force." It noted that an element of the common law crime of battery was "the intentional application of unlawful force against the person of another." *Id.* at 1270. The element could be "satisfied by even the slightest offensive touching." *Id.* The Supreme Court determined that the common law definition did not fit the ACCA context where the term "force" was accompanied by the modifiers "physical" and "violent." *Id.* at 1271. The Supreme Court also attributed significance to the term "felony" in the ACCA meaning. *Id.* It observed that "even today a simple battery—whether of the mere-touching or bodily-injury variety—generally is punishable as a misdemeanor," and concluded that "[i]t is unlikely that Congress would select as a term of art defining 'violent felony' a phrase that the common law gave peculiar meaning only in its definition of misdemeanor." *Id.* 1271-72. That "physical force" "normally connotes force strong enough to constitute 'power'" is "all the more so when it is contained in a definition of 'violent felony.'" *Id.* This reasoning indicates the Supreme Court's recognition that Congress assigns the term "force" different meaning in the felony context than in the misdemeanor context.

For the same reason, the First Circuit's holding in *United States v. Holloway*, 630 F.3d 252 (1st Cir. 2011), does not disturb its holding in *Nason*. In *Holloway,*

12

the First Circuit considered "whether a federal court may conclude that a conviction under Massachusetts's simple assault and battery statute qualifies as a violent felony under the ACCA." *Id.* at 254. It is true, as Mr. Bryant contends, that following *Johnson*, the First Circuit overruled *United States v. Mangos*, 134 F.3d 460 (1st Cir. 1998), which had held that "did assault and beat" charging language "suffices to identify the harmful brand of battery for purposes of sentencing under either the ACCA or the career offender provision of the U.S. Sentencing Guidelines." *Holloway*, 630 F.3d at 257. The *Holloway* Court concluded that in view of *Johnson* and Massachusetts state interpretations of the scope of the assault and battery statute, "a sentencing court may not rely on the generic 'did assault and beat' charging language to identify which particular battery offense served as the offense of conviction." *Id.* at 260.

*Holloway* is no more than the First Circuit's declared allegiance to the Supreme Court's directive in *Johnson*. As the Government correctly observes, "[t]here was simply no discussion of § 922(g)(9) or any attempt to define misdemeanor crime of domestic violence." *Id.* After *Johnson*, the Court will not incorporate the construction of "physical force" under the definition of "violent felony" in the ACCA to its analysis of "physical force" under the definition of "misdemeanor crime of domestic violence" in the firearms possession prohibition.

In sum, the holding in *Nason* that "all convictions under [17-A M.R.S. § 207] qualify as misdemeanor crimes of domestic violence within the purview of 18 U.S.C. § 922(g)(9)," 269 F.3d at 21, remains the law in this Circuit and binding on this

13

Court. *Holloway*, 630 F.3d at 258. Therefore, the indictment states a federal offense because Mr. Bryant is alleged to have possessed ammunition after having been convicted of a recognized predicate offense.

## III. CONCLUSION

The Court DENIES Mr. Bryant's Motion to Dismiss the Indictment (Docket # 20).

SO ORDERED

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 13th day of April, 2011